# EXHIBIT A

FRANCHISE    39005

DATE EXECUTED    12/20/05

# FRANCHISE AGREEMENT

DOCTOR'S ASSOCIATES INC.

with

Avi Cohen

Ghazi J. Faddoul

FTC
04/01/05

# FRANCHISE AGREEMENT

This Franchise Agreement (this "Agreement") is made __December 20,__ __2005__ between Doctor's Associates Inc , a Florida corporation with a principal office in Fort Lauderdale, Florida ("we" or "us"), and __Avi Cohen, Ghazi J. Faddoul__ of __Ohio__ ("you"), for one (1) SUBWAY® restaurant (the "Restaurant") to be located within the territory of Development Agent __Rabi I/Faddoul__ or the Development Agent's successor(s), under DA contract number __593__ , as specified in Item 2 of the DAI Offering Circular in effect as of the date of this Agreement

## RECITALS.

A  We are the owner of a proprietary system (the "System") for establishing and operating restaurants featuring sandwiches and salads under our trade name and service mark SUBWAY®  We developed the System spending considerable money, time, and effort  The System includes the trademark SUBWAY®, other trademarks, trade names, service marks, commercial announcements (slogans) and related insignia (logos) we own (the "Marks"), goodwill associated with the Marks, trade dress; recipes, formulas, food preparation procedures, business methods, forms, and policies; trade secrets, knowledge, techniques, and developments

B  We operate and franchise others to operate SUBWAY® restaurants using the System, including the Marks

C  You want access to the System to establish and operate the Restaurant at a location you select and we approve

D  You acknowledge the System includes confidential and proprietary information which we, our Affiliates (defined below), our development agents and our Affiliates' development agents, franchisees, and agents, will give you to use only to establish and operate the Restaurant  An "Affiliate" means a person or entity that directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, another person or entity

E  We have granted, and will continue to grant, access to the System to others to establish and operate SUBWAY® restaurants  Our goal is to be the number one quick service restaurant system in every market we enter  This Agreement does not grant you the right to own additional SUBWAY® restaurants  You acknowledge we do not have to sell you additional franchises or consent to your purchase of existing franchises

F. You acknowledge the only consideration we receive from you for granting you the license to use the System consists of the Franchise Fee, the Royalty and performance of your other promises under this Agreement

G  You acknowledge you personally received our Franchise Offering Circular and its exhibits, including this Agreement (the "Offering Circular"), at or prior to your first personal meeting with our employee, development agent, agent, or representative and at least ten (10) business days before you signed this Agreement, and you signed a Receipt for the Offering Circular  You represent you carefully reviewed the Offering Circular and had enough time to consult with a lawyer, accountant, or other professional advisor, if you wanted, and you understand and agree to be bound by the terms, conditions, and obligations of this Agreement  You also represent you had full opportunity, with the help of a professional advisor if you used one, to ask us and our employees, development agents, agents, or representatives, all appropriate questions and we and our employees, development agents, agents or representatives answered all of your questions to your satisfaction, except questions on the subject of potential earnings, discussed in the following paragraph  If you did not use a professional advisor, you represent you are satisfied relying on your own education, experience, and skill in evaluating the merits of a franchise offering

H  You acknowledge no employee, agent, or representative of ours, or of our Affiliates, or our development agents, made any oral, written or visual representation or projection to you of actual or potential sales, earnings, or net or gross profits  You also acknowledge no employee, agent, or representative of ours, or of our Affiliates, or our development agents, has made any statements that are contrary to, or different from, the information in the Offering Circular, including but not limited to any statements about advertising, marketing, media support, media penetration, training, store density, store locations, support services and assistance, or the costs to establish or operate a SUBWAY® restaurant, except for any statements you wrote in at Paragraph 15

I  You represent you understand the risks of owning a business and specifically the risks of owning a SUBWAY® restaurant, and you are able to bear such risks  You acknowledge the success of the Restaurant will depend primarily on your own efforts and abilities and those of your employees, and you will have to work hard and use your best efforts to operate the Restaurant  You also acknowledge other factors beyond our or your control will

2

affect the Restaurant's success, including but not limited to, competition, demographic patterns, consumer trends, interest rates, economic conditions, government policies, weather, local laws, rules and regulations, legal claims, inflation, labor costs, lease terms, market conditions, and other conditions which may be difficult to anticipate, assess, or even identify You acknowledge that you are subject to all federal, state and local laws relating to the franchise business You recognize some SUBWAY® restaurants have failed and more will fail in the future You understand that your success will depend substantially on the location you choose. You acknowledge our approval of the location for the Restaurant does not guarantee the Restaurant's success at that location and the Restaurant may lose money or fail

J This Agreement does not grant you any territorial rights and we and our Affiliates have unlimited rights to compete with you and to license others to compete with you

K. **YOU UNDERSTAND AND ACKNOWLEDGE THAT PARAGRAPH 14 OF THIS AGREEMENT AMENDS ANY EXISTING FRANCHISE AGREEMENTS YOU HAVE WITH US**, to include the following provisions of this Agreement  Subparagraph 5 b  (regarding compliance with applicable laws and Operations Manual), Subparagraph 5 c (regarding payment of taxes, costs and expenses, responsibility for employment practices and employees, insurance and indemnification), Subparagraph 5 f (regarding reporting information electronically by personal computer based point-of-sale system), Subparagraph 5 l (regarding increasing advertising contributions), Subparagraph 5 m (regarding use of domain names), Paragraph 8 (regarding defaults and termination), Paragraph 10 (regarding dispute resolution), Subparagraph 11 f (regarding interest and late fees), Subparagraph 11 m (regarding no territorial rights and our unlimited right to compete), Subparagraph 11 n (regarding compliance with anti-terrorism laws), Subparagraph 11.o ( authorization to use personal information and to conduct an investigative background search), Paragraph 13 (regarding governing law, merger clause and continuing effect), and Paragraph 17 (regarding limitation of liability)

L. YOU UNDERSTAND AND ACKNOWLEDGE ALL DISPUTES OR CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT, EXCEPT FOR CERTAIN OF OUR CLAIMS DESCRIBED IN SUBPARAGRAPH 10 d , WILL BE ARBITRATED IN CONNECTICUT, UNDER PARAGRAPH 10 BELOW, IF NOT OTHERWISE RESOLVED

*AGREEMENT:*

Acknowledging the above recitals, we and you (the "parties") agree

**1. FRANCHISE FEES.** When you sign this Agreement, you will pay us the Franchise Fee checked below, which we will not refund except as we specifically provide for below  [Check one]

\_\_\_\_a  **Standard Fee**  $12,500  You will pay our standard fee for a first or additional franchise. We may refund one-half (1/2) of your Franchise Fee if you fail to achieve a passing score on the standardized test conducted during the training program as provided in Subparagraph 5.a (2)  If you sign this Agreement, including the Specific Location Rider, we may refund your Franchise Fee as provided in Subparagraph 5 a (1) of this Agreement as amended by the Specific Location Rider

\_\_\_\_b  **Reduced Fee.**  $6,000  (i) You represent you are currently a SUBWAY® franchisee and all of your franchises are in substantial compliance as defined in the Operations Manual (referenced in Subparagraph 5 b ) and there are no defaults under any Franchise Agreements, or (ii) You are purchasing the first franchise for a location that meets our qualifications for a non-traditional location or (iii)  You are purchasing a franchise for a location within an airport or other transportation facility and you qualify as a Disadvantaged Business Enterprise as defined by the *Code of Federal Regulations Title 49: Transportation*  If you are purchasing a franchise for a non traditional location under clause (ii), we may disapprove the location within ninety (90) days, terminate this Agreement and refund the Franchise Fee  If any of these representations are not true (based upon the most recent store evaluation) when the Restaurant opens, you agree to pay an additional $6,500

\_\_\_\_c  **Extension Fee**  $1,000  You previously signed a Franchise Agreement and paid a Franchise Fee but did not sign a Sublease in the time permitted  The original Franchise Agreement is replaced by this Agreement  You agree to sign a Sublease within two (2) years with no right to any extension

\_\_\_\_d  **Satellite Fee**  $1,500  You will operate the Restaurant as a limited restaurant supported by an existing Base Restaurant  This Agreement for the Restaurant, including the Satellite Rider, is the separate Franchise Agreement for the satellite restaurant  We will refund the Franchise Fee for the satellite restaurant as provided in Subparagraph 5 a(1) of this Agreement as amended by the Satellite Rider

\_X\_e  **Add On Fee**  $8,500  Individuals who are existing SUBWAY® franchisees represent their franchises are in substantial compliance with the Operations Manual and there are no defaults under any Franchise Agreements  The Franchise Fee is the reduced Franchise Fee of $6,000 plus an add-on fee of $2,500 to add individuals who are not SUBWAY® franchisees  If the representations of the existing franchisees are not true when a lease is signed, you agree to pay an additional $4,000  We may refund your add-on fee of $2,500 if an individual is added to this

3

Agreement and fails to achieve a passing score on our standardized test conducted during the training program as provided in Subparagraph 5.a (2)

\_\_\_\_f  **School Lunch**  $0  A school board, school district, municipality or institutional food service provider (or its nominee), or an individual existing franchisee is signing this Agreement to establish a restaurant in a school (grades K-12). This Agreement includes the School Lunch Rider

\_\_\_\_g  **Transfer**  $0  Franchise No _____ owned by _____ ("Seller") was transferred to you  (Seller may have paid a transfer fee.)  The Seller's Franchise Agreement is replaced by this Agreement

\_\_\_\_h.  **Amendment or Renewal**  $0  This Agreement replaces and/or renews the Franchise Agreement dated _____

**2. ROYALTY PAYMENTS.** You will pay us weekly a Royalty equal to eight percent (8%) of the gross sales from the Restaurant and each sandwich restaurant you operate throughout the term of this Agreement  "Gross sales" means all sales or revenues, including catering and delivery, from your business exclusive of Sales Tax (as defined in Subparagraph 5 c )

**3. PERMITTED ACCESS TO THE SYSTEM AND MARKS.** We grant to you during the term of this Agreement

a  Continued access to the System, including the loan of a copy of the Operations Manual

b.  Continued access to information pertaining to new developments, improvements, techniques and processes in the System

c  A limited, non-exclusive license to use the Marks in connection with the operation of the Restaurant at one (1) location at a site we and you approved

**4. OUR OBLIGATIONS.** We will provide you during the term of this Agreement

a.  A training program for establishing and operating a restaurant using the System, at a location we choose  You will pay all transportation, lodging, and other expenses to attend the training program

b  A representative or development agent of ours to call on during our representative's or development agent's normal business hours for consultation concerning the operation of the Restaurant

c.  A program of assistance, including periodic consultations with our representative or development agent in a location we choose, a newsletter advising of new developments and techniques in the System, and access during their normal business hours to specified office personnel you may call for consultations concerning the operation of the Restaurant

**5. YOUR OBLIGATIONS.**  You agree to do the following

a   In regards to the Sublease for the Restaurant·
  (1) You will sign a Sublease or in limited circumstances a license for the Restaurant ("Sublease") within two (2) years after signing this Agreement  If you do not, this Agreement will automatically expire unless you i) request and are granted an extension, ii) pay an extension fee of $1,000 US, and iii) sign our then current franchise agreement
  (2) Before opening, you must successfully complete the training program we provide under Subparagraph 4 a  You may be dismissed from the training program and this Agreement may be terminated if you fail to act in a professional manner at all times during the training program in accordance with our Business Code of Conduct  Your Franchise Fee will not be refunded  You may be required to achieve a passing score on our standardized test conducted during the training program  If you fail to achieve a passing score, you will have the option to take one final retest  If you fail to achieve a passing score on the final retest or you opt not to take the final retest, we may dismiss you from the training program, cancel this Agreement and refund one-half (1/2) of your Franchise Fee  If more than one individual signs this Agreement, any one of the individuals who does not achieve a passing score on the test may be dismissed from the training program, removed from this Agreement and no portion of the Franchise Fee will be refunded. We will not reimburse you for your travel expenses
  (3) The Restaurant will be at a location found by you and approved by us  We or an Affiliate we designate will lease the premises and sublet them to you  We or our designee will attempt to secure a fair rent for the premises but we cannot represent it will be the best available rent in

4

your area If you materially breach this Agreement or the lease, we or our designee may terminate the Sublease with you after giving the notice required in the Sublease

(4) After you sign the Sublease, you will construct, equip, and open the Restaurant to the specifications contained in the Operations Manual

b You will operate your business in compliance with applicable laws and governmental regulations, including, but not limited to, those concerning labor, taxes, health, and safety You will obtain and keep in force, at your expense, any permits, licenses, registrations, certifications or other consents required for leasing, constructing, or operating the Restaurant You may be required by local law to participate in a waste recycling or diversion program which may require that you register and make ongoing fee payments Upon request, you will forward to us copies of any documentation relating to these items

You will operate the Restaurant in accordance with our Operations Manual (the "Operations Manual"), which contains mandatory and suggested specifications, standards and operating procedures, which may be updated from time to time as a result of experience, or changes in the law or marketplace You will make, at your sole expense, changes necessary to conform to the Operations Manual, including, but not limited to, repairing items not in good condition or not functioning properly, and upgrading and remodeling the Restaurant, including leasehold improvements, furniture, fixtures, equipment, and signs You acknowledge these requirements are necessary and reasonable to preserve the identity, reputation, and goodwill we developed and the value of the franchise You agree to make the repairs and the updates, and pay all reasonable, required costs within reasonable time periods we establish You will adhere to quality control standards we prescribe in the Operations Manual or elsewhere with respect to the character or quality of the products you will sell or the services you will perform in association with the Marks You must respond to and satisfy all customer complaints If you fail to operate the Restaurant in accordance with the Operations Manual, we may terminate this Agreement under Subparagraphs 8 a and 8.b In lieu of termination, we may impose a fee as a pre-estimate of losses for each day the Restaurant is not in compliance with the Operations Manual to compensate us for damages and for costs we incur to compel you to bring the Restaurant into compliance The Operations Manual, as amended from time to time, is intended to further the purposes of this Agreement and is specifically incorporated into this Agreement The Operations Manual constitutes a confidential trade secret and will remain our property You may not, and you may not allow others to, reproduce or photocopy the Operations Manual, in whole or in part, without our written consent You will not conduct any business or sell any products at the Restaurant other than the business and products we approve for the location

c You will be solely responsible for all costs of building and operating the Restaurant, including, but not limited to, sales or use tax, goods and services tax, gross receipts tax, excise tax or other similar tax ("Sales Tax"), other taxes, fees, customs, stamp duty, other duties, governmental registrations, construction costs and permits, equipment, furniture, fixtures, signs, advertising, insurance, food products, labor, utilities, and rent We will not have any liability for these costs You will pay any Sales Tax imposed by law on the Franchise Fee, Royalty, advertising fees, and any other amounts payable under this Agreement, whether assessed on you or on us If we must make the payment to the taxing jurisdiction for any Sales Tax that is your responsibility under this Agreement, we will pass the amount on to you and you will reimburse us You must register to collect and pay Sales Taxes before you open the Restaurant, and you must maintain these registrations during the term of this Agreement You will recruit, hire, train, terminate, and supervise all Restaurant employees, set pay rates, and pay all wages and related amounts, including any employment benefits, unemployment insurance, withholding taxes or other sums, and we will not have any responsibility for these matters

The Insurance you must obtain and maintain includes, but is not limited to, statutory worker's compensation in the minimum amount required by law, comprehensive liability insurance, including products liability coverage, in the minimum amount of $2,000,000 per occurrence/$4,000,000 general aggregate, and business vehicle coverage, including hired and non-owned vehicle liability coverage, in the minimum amount of $1,000,000 You must provide us with a copy of your Certificate of Insurance when you return your signed Sublease or finalize your lease You will keep all insurance policies in force for the mutual benefit of the parties With the exception of worker's compensation and owned vehicle coverage, all insurance policies must name as additional insureds, us, our Affiliates, our Development Agent assigned to the Restaurant (the "Development Agent"), and our agents, representatives, shareholders, directors, officers and employees, and those of our Affiliates and the Development Agent (the "Additional Insureds"), with such coverage being primary coverage Your insurance company must agree to give us at least twenty (20) days' prior written notice of termination, expiration, material modification, or cancellation of your policy, or cancellation of any of the Additional Insureds as an additional insured You agree to defend, indemnify, and save harmless, the Additional Insureds, from and against all liability, injury, loss, cost and expense of any type (including lawyers' fees), and damages that arise in or in connection with your operation of the Restaurant, regardless of cause or any fault or negligence (including sole or concurrent negligence) by the Additional Insureds, which indemnification will not be relieved by any insurance you carry You acknowledge we may modify or increase the insurance requirements during the term of this Agreement due to changes in experience, and you agree to comply with the new requirements You acknowledge we may from time to time designate one or more approved insurance brokers or companies under a master insurance program we establish for franchisees

5

generally, and you must purchase your coverage from one of the approved insurance brokers and their associated company

    d  You will not own or operate, or assist another person to own or operate, any other business anywhere, directly or indirectly, during the term of this Agreement, which is identical with or similar to the business reasonably contemplated by this Agreement, except as our authorized representative or as our duly licensed franchisee at a location we approve  You agree to pay us $12,500 for each business you own or operate in violation of this Subparagraph, plus eight percent (8%) of its gross sales, as being a reasonable pre-estimate of the damages we will suffer  We may also seek to enjoin your activities under Subparagraph 10.d

    e  You will sign and deliver to us appropriate electronic funds transfer preauthorized draft forms (or forms serving the same purpose) for the Restaurant's checking account before you open the Restaurant  By signing these forms, you authorize us to withdraw money from the account on a timely basis to collect the appropriate Royalty, contributions to the Subway Franchisee Advertising Fund Trust, interest, late fees, and other charges that you will owe, under this Agreement or under any other Franchise Agreement you have with us  You authorize us to collect amounts you owe to the Subway Franchisee Advertising Fund Trust under our own name, for unpaid advertising contributions.

    f  You will report your gross sales by telephone, facsimile, electronically, or by other means we permit, within two (2) days after the end of the business week (currently Tuesday)  You will submit weekly summaries showing results of the Restaurant's operations by the following Saturday, in writing or in electronic form, as we permit, to locations we designate  You will use and maintain at the Restaurant a personal computer based point-of-sale system and software compatible with our requirements  At all times during the term of this Agreement you will use and maintain an address to send and receive electronic mail and attachments on the Internet and access to the World Wide Web  You agree to install additions, substitutions, and upgrades to the hardware, software, and other items to maintain full operational efficiency and to keep pace with changing technology and updates to our requirements  You will record all sales and designated business information in your system in the manner we specify in the Operations Manual  You will report your information to us electronically at weekly or other intervals we specify.  You also agree we may call up or poll your system to retrieve the information at any time  We may estimate gross sales if you fail to report on time  We may withdraw money from your checking account for Royalty and advertising contributions under the above Subparagraph, for the amounts then due based on reported or estimated sales.  We will adjust charges based on estimated gross sales after we determine actual sales

    g  You will allow our representatives and our development agent and our development agent's representatives to enter your business premises without prior notice during regular business hours to inspect, audit, photocopy, and videotape your business operations and records, and to interview the Restaurant's employees and customers  You will keep all of the following at the Restaurant for a period of three (3) years  cash register tapes, control sheets, weekly inventory sheets, deposit slips, bank statements and canceled checks, sales and purchase records, business and personal tax returns, and accounting records  You also grant us permission to examine without prior notice to you, all records of any supplier relating to your purchases

    h  You will pay us, if we or our representatives determine that you under-reported gross sales, all Royalty, advertising contributions and other charges due on the gross sales that were not reported, plus interest and the late fee as provided in Subparagraph 11 f  If reported gross sales for any calendar year are less than ninety-eight percent (98%) of the actual gross sales for that period, you will reimburse us for all costs of the investigation that discovered the under-reporting, including salaries, outside accountant fees, travel, meals, and lodging  You agree to pay for all costs of any audit that did not occur due to your failure to produce your books and records at the time of audit  If we notified you in writing of the audit at least five (5) days before the scheduled date  If you fail to submit all of your information to be audited, we may estimate your sales and charge you

    i  You will pay weekly into the Subway Franchisee Advertising Fund Trust ("SFAFT"), four and one-half percent (4 ½%) of gross sales of the Restaurant  At any time, franchisees may temporarily or permanently increase the advertising percentage for either the country or any market designated by SFAFT by a two-thirds (2/3) vote on the basis of one (1) vote for each operating restaurant  We and our Affiliates or another entity acting on behalf of our franchisees may negotiate advertising contributions and programs with suppliers  We or our Affiliate may designate that advertising contributions be forwarded to SFAFT or be placed into an advertising fund to be spent at our or our Affiliate's complete unrestricted discretion for the benefit of franchisees  You acknowledge advertising contributions may not benefit franchisees in any area in proportion to the amounts they paid

    j  You will not place "For Sale" or similar signs at or in the general vicinity of the Restaurant or use any words in any advertising that identify the business offered for sale as a SUBWAY® restaurant

    k  You will make prompt payment of all charges you owe to us, our Affiliates, your vendors, and the landlord of the premises, in addition to Royalty and advertising contributions to SFAFT, and pay all Sales Tax, other taxes, and debts of the Restaurant as they become due

6

l   You will use or display the Marks on materials and stationery used in connection with the Restaurant only as we permit and as provided in this Agreement or in the Operations Manual  You will display the following notice in a prominent place at the Restaurant  *"The SUBWAY® trademarks are owned by Doctor's Associates Inc. and the independent franchised operator of this restaurant is a licensed user of such trademarks."*

m   You will operate and promote the Restaurant under the name SUBWAY® or other name we direct without prefix or suffix added to the name  You will not use the word "SUBWAY" as part of a corporate or other business name  You will not license or purchase vehicles, fixtures, products, supplies or equipment, or incur any obligations except in your individual, corporate or other business name  Any sign face bearing the name SUBWAY® will remain our property even though you may have paid a third party to make the sign face  You will not use the Marks in a manner that degrades, diminishes, or detracts from the goodwill associated with the Marks nor will you use the Marks in a manner which is scandalous, immoral, or satirical. You agree to promptly change the manner of such use if requested to do so by us. You will not establish a local domain name for a website using the word "SUBWAY" without our prior written authorization  The domain name must be registered under the name of DAI  We will require you to cancel your registration of the domain name if you fail to obtain our prior written authorization  At our request, you must remove any inappropriate information we deem not to be in the best interest of the SUBWAY® franchise system.  All present or future goodwill associated with the Marks belongs to us  You agree not to contest the validity or ownership of any of the Marks, or to assist any other person to do so  You agree you do not have and you will not acquire any ownership rights in the Marks, and you will not register or attempt to register any of the Marks  You agree to assign and transfer to us your rights in or registrations of the Marks that you have or may have  All references to the Marks in this Agreement include any additional or replacement Marks associated with the System that we authorize you to use

n   You will always indicate your status as an independent franchised operator and franchisee to others and on any document or information released by you in connection with the Restaurant

o   You acknowledge the System includes confidential and proprietary information, including, but not limited to customer lists, vendor lists, products, recipes, formulas, specifications, food preparation procedures, devices, techniques, plans, business methods and strategies, organizational structure, financial information, marketing and development plans and strategies, advertising programs, creative materials, media schedules, business forms, drawings, blueprints, reproductions, data, Franchise Agreements, business information related to franchisees, pricing policies, trademarks, published materials including the mark SUBWAY® and variations thereof, documents, letters or other paper work, trade secrets, know-how, information contained in the Operations Manual, and the *Subway to Subway* publication, and all information we or our Affiliates designate as confidential ("Confidential Information").  Confidential Information will remain our property or our Affiliate's property

During the term of this Agreement you will not, without the express written consent of our board of directors, disclose, publish, or divulge any Confidential Information to any person, firm, corporation or other entity, or use any Confidential Information, directly or indirectly; for your own benefit or the benefit of any person, firm, corporation or other entity, other than for our benefit  You agree that you will only disclose such Confidential Information to those employees that need such Confidential Information in the course of their duties and shall only reveal or transmit the Confidential Information to them after advising them that the Confidential Information has been made available to you subject to this Agreement and they agree to be bound by the confidentiality terms of this Agreement  You acknowledge that if you violate this provision, substantial injury could result to us, our Affiliates, you and other SUBWAY® franchisees  If you violate this provision, you will be liable to us for our damages and we may also seek to enjoin your activities under Subparagraph 10.d  You will return all written Confidential Information, including all reproductions and copies thereof promptly upon our request  In the event that you are requested or required (by oral interrogatories, requests for information or documents in legal proceedings, subpoena, civil investigative demand or similar process) to disclose any part of Confidential Information, you shall provide us with prompt written notice of any such request or requirement so that we may seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Subparagraph  If in the absence of a protective order or other remedy or waiver, you are legally compelled to disclose Confidential Information to any tribunal or else stand liable for contempt or suffer other censure or penalty, you may, without liability hereunder, disclose to such tribunal only that portion of Confidential Information which your legal counsel advises that you are legally required to disclose

Confidential Information shall not include, and the foregoing restrictions shall not apply to, any information or materials (a) which becomes generally known to the public other than as a result of a disclosure by you or your representative, (b) which was known to you and reduced to written form in documents which were in your possession at the time such information was disclosed to you, provided that the source of such information or materials was not known by you to be bound by a nondisclosure agreement with other contractual, legal or fiduciary obligations of confidentiality to us or any other party with respect to such information or materials, (c) becomes available to you on a non-confidential basis from a source other than us, provided that such source is not bound by a nondisclosure agreement with other contractual, legal or fiduciary obligations of confidentiality to us or any other party with respect to such information or materials, or (d) which is independently developed

7

by Recipient without the use of Confidential Information. The burden of proving that Confidential Information may be disclosed pursuant to the exception set forth in this subparagraph shall be on the Recipient

**6. RELOCATION OF THE RESTAURANT.** You may relocate the Restaurant only with our prior written approval If the lease expires and is not renewed, or if the landlord terminates the lease, you will have one (1) year to relocate the Restaurant provided you did not breach the Sublease You will pay all expenses and liabilities to terminate the lease and move if you relocate the Restaurant. If you materially breach this Agreement, we or our designee may cancel the Sublease with you after giving the notice required in the Sublease

**7. TERM OF AGREEMENT.** If, under local law, this Agreement must be registered then it will not become effective until it is The term of this Agreement is twenty (20) years from the date of this Agreement and will automatically renew for additional twenty (20) year periods unless either party chooses not to renew and sends written notice to the other at least six (6) months before the expiration of any twenty (20) year period Upon renewal you have the option to either i) continue under the terms of this Agreement and the royalty rate will increase to ten percent (10%) with all other terms and conditions of this Agreement remaining the same, or ii) you may sign our then current Franchise Agreement which will replace this Agreement and which may contain terms or conditions that differ from this Agreement, including financial terms, except for the royalty rate which will remain at eight percent (8%) This Agreement will be automatically renewed under option i) unless you send written notice of your intent to renew under option ii) at least six (6) months prior to expiration of this Agreement There will be no renewal fee

**8. TERMINATION AND EXPIRATION PROVISIONS.**

a If we give you ten (10) days' written notice, we may, at our option and without prejudice to any of our other rights or remedies provided under this Agreement, terminate this Agreement if (i) you abandon the Restaurant, or (ii) you fail to pay any money you owe us, our Affiliates, SFAFT, the landlord of the premises, or any amounts we may become liable to pay because of your action or omission, or (iii) you are evicted from the Restaurant location for non-payment of rent or related charges The notice will specify the default and provide you ten (10) days to remedy the default from the date of delivery of the notice

b. If we give you ninety (90) days' written notice, we may, at our option and without prejudice to any of our other rights or remedies provided under this Agreement, terminate this Agreement if you (i) do not substantially perform all of the terms and conditions of this Agreement not otherwise covered in Subparagraph 8 a , or (ii) you lose possession of the premises where the Restaurant is located, or (iii) you under-report your gross sales by two percent (2%) or more for a calendar year, or (iv) you become insolvent, make an assignment for the benefit of creditors or seek bankruptcy relief, either reorganization or liquidation, in any court, legal or equitable, or (v) you lose any permit or license which you need to operate the Restaurant, or (vi) you fail to comply with your duties under this Agreement or the Operations Manual The notice will specify the default and provide you sixty (60) days to remedy the default from the date of delivery of the notice. If you cure the default within sixty (60) days, the notice will be void

c We may, at our option and without prejudice to any of our other rights or remedies provided under this Agreement, terminate this Agreement without an opportunity to remedy the default unless prohibited by law if i) you fail to operate your business in compliance with applicable laws and government regulations, or ii) you are convicted of an indictable offense, fraud or unfair or deceptive practices or otherwise engage in any acts of moral turpitude, or iii) we determine that you are a suspected terrorist or otherwise associated directly or indirectly with terrorist activities, or iv) you are dismissed from the training program

Beginning with a second notice of default under Subparagraph 8 a or 8 b., we may include a clause that because of repeated cause for termination, your subsequent repeat of a given default in the next twelve (12) months will be good cause for a final termination without providing you the opportunity to remedy the default or even if you remedy the default

d Our waiver of any of your defaults will not constitute a waiver of any other default and will not prevent us from requiring you to strictly comply with this Agreement

e Upon termination or expiration of this Agreement, all of your rights under this Agreement will terminate You must change the appearance of the Restaurant, unless we instruct you otherwise, so it will no longer be identified as a SUBWAY® restaurant, and you must stop using the System, including the Marks, signs, colors, structures, personal computer based point-of-sale system software developed for SUBWAY® restaurants, printed goods and forms of advertising indicative of our sandwich business and return the Operations Manual to us You are required to cancel any permits, licenses, registrations, certifications or other consents required for leasing, constructing, or operating the Restaurant If you fail to do so within a reasonable time, we are authorized to cancel them for you If you breach this provision, you will pay us $250 per day for each day you are in default, as being a reasonable pre-estimate of the damages we will suffer We may also seek to enjoin your activities under Subparagraph 10 d

8

f  If any of the provisions above which permit us to terminate the franchise violate your state law, if it applies, such state law relating to termination will prevail over the offending provisions

g  For one year after the termination, expiration or transfer of this Agreement, you will not directly or indirectly engage in, or assist another to engage in, any sandwich business within three (3) miles of any location where a SUBWAY® restaurant operates or operated in the prior year  You agree to pay us $12,500 for each sandwich business location you are associated with in the restricted area in violation of this Subparagraph, plus eight percent (8%) of the gross sales of such location during the one (1) year period, as being a reasonable pre-estimate of the damages we will suffer  We may also seek to enjoin your activities under Subparagraph 10 d  Nothing in this Subparagraph or any other provision of this Agreement grants you any territorial or other exclusive rights

h  Upon termination, expiration or transfer of this Agreement, you agree to remain bound by the provisions of confidentiality and non-disclosure under Subparagraph 5 o of this Agreement  You acknowledge that all Confidential Information will remain our property or our Affiliate's property  You will not at any time after termination, expiration or transfer of this Agreement, without our prior written consent, disclose to any unauthorized person or entity, or use for the benefit of any unauthorized person or entity, any Confidential Information

i  Upon termination or expiration of this Agreement, all telephone listings, telephone numbers, Internet addresses and domain names used by the public to communicate with the Restaurant will automatically become our property if permitted by state law  In any event, you agree not to use any telephone numbers, Internet addresses or domain names associated with the Restaurant after the termination or expiration of this Agreement

j.  We have the right to repurchase the Restaurant within thirty (30) days of termination or expiration of this Agreement at fair market value minus any money you owe us, our affiliates or the landlord.  If we do not purchase the Restaurant, you are responsible for obtaining a termination and mutual release of the lease from the landlord of the premises on which the Restaurant is located  You are responsible for all costs associated with obtaining the termination and mutual release, including but not limited to any amount owed to the landlord

### 9. TRANSFER AND ASSIGNMENT OF THE RESTAURANT.

a  You may only transfer the Restaurant with this Agreement and only with our prior written approval, as provided in this Paragraph 9  You may transfer the Restaurant and this Agreement to a natural person or persons (not a corporation), provided: (1) you first offer, in writing, to sell the Restaurant to us on the same terms and conditions offered by a bona fide third party purchaser, we fail to accept the offer within thirty (30) days, and we approve your contract with the purchaser, (2) each purchaser has a satisfactory credit rating, and is of good moral character, (3) each purchaser received a passing score on our standardized test (if not already a SUBWAY® franchisee) and attended and successfully completed our training program or agrees to attend our first available training program promptly after the sale (and then must successfully complete the training program or will be in default under the Franchise Agreement), (4) each purchaser received the required disclosure documents in accordance with our policies and federal and state laws, rules, and regulations, and signs the then current form of Franchise Agreement which will amend and replace this Agreement and may contain terms that differ from this Agreement, including financial terms, and assumes the Sublease for the Restaurant, (5) you pay in full all money you owe us, our Affiliates, and SFAFT, for all your SUBWAY® restaurants and you are not otherwise in default under this Agreement, (6) you pay us $5,000 (plus any applicable Sales Tax) for our legal, accounting, training, and other expenses we incur in connection with the transfer, (7) you deliver a general release in favor of us, the Development Agent and our Affiliates, and agents, representatives, shareholders, partners, directors, officers, and employees of ours and of the Development Agent and our Affiliates signed by you and each purchaser, (8) you transfer the Operations Manual for the Restaurant to the purchaser on the date of transfer, and (9) at or prior to the time of the transfer you bring the Restaurant into full compliance with our then current standards set forth in the Operations Manual  All transfer documents will be in English in a form satisfactory to us

b  You may assign your rights under this Agreement to operate the Restaurant (but not this Agreement) to a corporation (or similar entity) provided  (1) the corporation is newly organized and its activities are confined exclusively to operating the Restaurant, (2) you are, and remain at all times, the owner of the controlling interest of the corporation, (3) the corporation delivers to us a written assumption of your obligations under this Agreement, (4) all shareholders of the corporation deliver to us a written guarantee of the full and prompt payment and performance by the corporation of all its obligations to us under the assignment, (5) you acknowledge to us in writing that you are not relieved of any personal liability, and (6) you deliver a general release described in Subparagraph 9.a , signed by you, the corporation, and each shareholder of the corporation  You will also remain personally liable under the Sublease

c Your rights under this Agreement may pass to your next of kin or legatee upon your death. Each such transferee must receive a passing score on our standardized test (if not already a SUBWAY® franchisee), deliver a written assumption to us, and agree in writing to attend our next training session Each transferee must then successfully complete our training program or will be in default under this Agreement The transferees will also assume the Sublease in writing

d. We may transfer and assign this Agreement without your consent, and this Agreement will inure to the benefit of our successors and assigns

### 10. ARBITRATION OF DISPUTES.

a Any dispute, controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration The arbitration shall be administered by an arbitration agency, such as the American Arbitration Association ("AAA") or the American Dispute Resolution Center, in accordance with its administrative rules including, as applicable, the Commercial Rules of the AAA and under the Expedited Procedures of such rules or under the Optional Rules For Emergency Measures of Protection of the AAA Judgment rendered by the Arbitrator may be entered in any court having jurisdiction thereof The costs of the arbitration will be borne equally by the parties The parties agree that Bridgeport, Connecticut shall be the site for all hearings held under this Paragraph 10, and that such hearings shall be before a single arbitrator, not a panel, and neither party shall pursue class claims and/or consolidate the arbitration with any other proceedings to which we are a party We will honor validly served subpoenas, warrants and court orders

b. If you breach the terms of your Sublease, the Sublessor, whether us or our designee, may exercise its rights under the Sublease, including to evict you from the franchised location Any action brought by the Sublessor to enforce the Sublease, including actions brought pursuant to the cross-default clause in Paragraph 6 of the Sublease (which provides that a breach of the Franchise Agreement is a breach of the Sublease), is not to be construed as an arbitrable dispute

The parties agree that you may seek a stay of any eviction brought under the cross-default clause in Paragraph 6 of the Sublease by filing a demand for arbitration in accordance with Subparagraph 10 a within thirty (30) days of the Sublessor's commencement of the eviction The stay may be lifted upon conclusion of the arbitration You may not seek a stay of eviction for any actions involving non-payment of rent or in a case where an arbitration award under the Franchise Agreement has been issued

c You may only seek damages or any remedy under law or equity for any arbitrable claim against us or our successors or assigns You agree that our Affiliates, shareholders, directors, officers, employees, agents and representatives, and their affiliates, shall not be liable nor named as a party in any arbitration or litigation proceeding commenced by you where the claim arises out of or relates to this Agreement You further agree that the foregoing parties are intended beneficiaries of the arbitration clause, and that all claims against them that arise out of or relate to this Agreement must be resolved with us through arbitration If you name a party in any arbitration or litigation proceeding in violation of this Subparagraph 10.c., you will reimburse us for reasonable costs incurred, including but not limited to, arbitration fees, court costs, lawyers' fees, management preparation time, witness fees, and travel expenses incurred by us or the party

d Notwithstanding the arbitration clause in Subparagraph 10 a , we may bring an action for injunctive relief in any court having jurisdiction to enforce our trademark or proprietary rights, the covenants not to compete, or the restriction on disclosure of Confidential Information in order to avoid irreparable harm to us, our affiliates and the franchise system as a whole

e Any disputes concerning the enforceability or scope of the arbitration clause shall be resolved pursuant to the Federal Arbitration Act, 9 U S C. § et seq ("FAA"), and the parties agree that the FAA preempts any state law restrictions (including the site of the arbitration) on the enforcement of the arbitration clause in this Agreement If, prior to an Arbitrator's final decision, either we or you commence an action in any court of a claim that arises out of or relates to this Agreement (except for the purpose of enforcing the arbitration clause or as otherwise permitted by this Agreement), that party will be responsible for the other party's expenses of enforcing the arbitration clause, including court costs, arbitration filing fees and other costs and attorney's fees

f We and our Affiliates, and you and your Affiliates, will not withhold any money due to the other party and its Affiliates, under this Agreement or any other agreement A party or its Affiliate that withholds money in violation of this provision will reimburse the party or its Affiliate whose money is withheld for the reasonable costs to collect the withheld money, notwithstanding the provisions of Subparagraph 10 a These costs include, but are not limited to, mediation and arbitration fees, court costs, lawyers' fees, management preparation time, witness fees, and travel expenses incurred by the party or its Affiliate or SFAFT, or its agents or representatives

g If a party (i) commences action in any court, except to compel arbitration, or except as specifically permitted under this Agreement, prior to an arbitrator's final decision, or (ii) commences any arbitration in any forum except where permitted under this Paragraph 10, or (iii) when permitted to commence a litigation proceeding, commences any litigation proceeding in any forum except where permitted under this Paragraph 10, then that party is in default of this Agreement. The defaulting party must commence arbitration (or a litigation proceeding, if permitted under this Paragraph 10), in a permitted forum prior to any award or final judgment. The defaulting party will be responsible for all expenses incurred by the other party, including lawyers' fees Subject to federal or state law, if a party defaults under any other provision of this Paragraph 10, or under any provision of Paragraph 17 or Paragraph 18, including, but not limited to, making a claim for special, incidental, consequential, punitive, or multiple damages, or damages in excess of the amount permitted under this Agreement, or you name a person or entity in any arbitration or legal proceeding other than us, the defaulting party must correct its claim. The defaulting party will be responsible for all expenses incurred by the other party, or the improperly named persons or entities, including lawyers' fees, and will be liable for abuse of process

**11. OBLIGATIONS OF THE PARTIES.** The parties also agree as follows

a You are, and will at all times be identified as, a natural person and an independent contractor You are not our agent, partner, or employee This Agreement does not create a partnership, joint venture, agency, or fiduciary relationship

b All or any part of your rights and privileges under this Agreement will return to us if for any reason you abandon, surrender, or suffer revocation of your rights and privileges

c If, for any reason, any court, agency, or tribunal with valid jurisdiction in a proceeding to which we are a party, decides in a final, non-appealable ruling, that a portion of this Agreement is contrary to, or in conflict with any applicable present or future law, rule, or regulation, after giving such portion the broadest legal interpretation possible, then that portion will be invalid and severable The remainder of this Agreement will not be affected and will continue to be given full force and effect Any invalid portion will be deemed not to be a part of this Agreement as of the date the ruling becomes final If you are a party to the proceedings, or upon your receipt of notice of nonenforcement from us If a court, agency, or tribunal decides a covenant not to compete is too broad as to scope, time, or geographic area, the parties authorize the court, agency or tribunal to modify the covenant to the extent necessary to make it enforceable

d No previous course of dealing or usage in the trade not specifically set forth in this Agreement will be admissible to explain, modify, or contradict this Agreement

e The parties will give any notice required under this Agreement in writing, and will send it by certified mail, registered mail or by a mail service which uses a tracking system, such as Airborne Express or Federal Express We will address notices to you at the Restaurant or at your home until you designate a different address by written notice to us You must notify us of any address changes, including changes to your electronic mail address. You will address notices to us to Doctor's Associates Inc , 325 Bic Drive, Milford, CT 06460-3059, Attention Legal Department Any notice will be deemed given at the date and time it is received, or refused, or delivery is made impossible by the intended recipient

f If your payment is more than one (1) week late you will pay a late fee equal to ten percent (10%) on any Royalty, advertising contributions, or other charges you will owe us under this Agreement Also, you will pay interest on all your past-due accounts at up to eighteen percent (18%), but the late fee and interest will not be greater than the maximum rate allowed by law in the state in which our principal office is located or the Restaurant is located, whichever is higher

g You must immediately notify us of any infringement of or challenge to your use of any of the Marks, or claim by any person of any rights in any of the Marks We will indemnify you for all damages for which you are held liable in any proceeding arising out of the use of any of the Marks in compliance with this Agreement, provided you notify us promptly, cooperate in the defense of the claim, and allow us to control the defense of the action If a third party challenges any of the Marks claiming infringement of alleged prior or superior rights in the Mark, we will have the option and right to modify or discontinue use of the Mark and adopt substitute Marks in your geographical business areas and in other areas we select. Our liability to you under such circumstances will be limited to your cost to replace signs and advertising materials You acknowledge and agree we have the exclusive right to pursue any trademark infringement claims against third parties

h If we must purchase the Restaurant's equipment, leasehold improvements, or both, under any applicable state law, rule, regulation, or court decision, if we terminate this Agreement, the purchase price will be your original cost, less depreciation and amortization, based on a five (5) year life under the straight-line method

i. If the landlord terminates the lease for the Restaurant and an arbitrator or court determines you did not breach the Sublease and it was our fault or our Affiliate's fault the landlord terminated the lease, our obligation to

11

you will be limited to the original cost of your leasehold improvements, less depreciation based on a five (5) year life under the straight-line method. We will pay you when you reopen the Restaurant in a new location. If the arbitrator or court determines you breached the Sublease or it was not our fault or our Affiliate's fault the landlord terminated the lease, we and our Affiliate will have no obligation to you for termination of the lease

j. If we are in default under this Agreement, you may give us written notice by certified mail, registered mail or by a mail service which uses a tracking system, such as Airborne Express or Federal Express, within ninety (90) days of the start of the default clearly stating each act or omission constituting the default. If we do not cure the default to your satisfaction within sixty (60) days after we receive your notice, you may give us notice that an arbitrable dispute exists. The parties will work diligently to attempt to resolve the arbitrable dispute in accordance with Paragraph 10.

k. You will pay us Sales Tax or other tax assessed on all payments you make to us that we must collect from you or pay ourselves to the taxing authority.

l. You will pay us any applicable Sales Tax or other tax on behalf of the local taxing authority at the same time and in the same manner you pay for the taxable goods or services, whether or not the requirement is specifically stated in this Agreement.

m. You understand and acknowledge this Agreement does not grant you any territorial rights and there are no radius restrictions or minimum population requirements which limit where we can license or open another SUBWAY® restaurant, unless provided under applicable state law. We and our Affiliates have unlimited rights to compete with you and to license others to compete with you. You understand and acknowledge we and our Affiliates retain the exclusive unrestricted right to produce, distribute, and sell food products, beverages, and other products, under the SUBWAY® mark or any other mark, directly and indirectly, through employees, representatives, licensees, assigns, agents, and others, at wholesale, retail, and otherwise, at any location, without restriction by any right you may have, and without regard to the location of any SUBWAY® restaurant, and these other stores or methods of distribution may compete with the Restaurant and may adversely affect your sales. You do not have any right to exclude, control, or impose conditions on the location or development of any SUBWAY® restaurant, other restaurant, store or other method of distribution, under the SUBWAY® mark or any other mark.

n. You acknowledge it is our intent to comply with all anti-terrorism laws enacted by the US Government. You further acknowledge that we may not carry on business with anyone officially recognized by the US Government as a suspected terrorist or anyone otherwise associated directly or indirectly with terrorist activities. The parties agree that if, at any time during the term of this Agreement, it is determined that you are a suspected terrorist or otherwise associated directly or indirectly with terrorist activities, that this Agreement will be terminated immediately. You acknowledge that you are not now, and have never been a suspected terrorist or otherwise associated directly or indirectly with terrorist activity, including but not limited to, the contribution of funds to a terrorist organization. You further acknowledge that it is not your intent or purpose to purchase a SUBWAY® franchise to fund or participate in terrorist activities.

o. You understand and acknowledge that, from time to time, circumstances may arise where we are required to conduct an investigative background search. You authorize us or our designee to conduct such an investigative background search, as necessary, which may reveal information about your business experience, educational background, criminal record, civil judgments, property ownership, liens, association with other individuals, creditworthiness and job performance.

**12. TERMS, REFERENCES AND HEADINGS.** All terms and words in this Agreement will be deemed to include the correct number, singular or plural, and the correct gender, masculine, feminine, or neuter, as the context or sense of this Agreement may require. Each individual signing this Agreement as the franchisee will be jointly and severally liable. References to "you" will include all such individuals collectively and individually. References to dollars ($) in this Agreement refer to the lawful money of the United States of America. The paragraph headings do not form part of this Agreement and shall not be taken into account in its construction or interpretation.

**13. GOVERNING LAW.** This Agreement will be governed by and construed in accordance with the substantive laws of the State of Connecticut, without reference to its conflicts of law, except as may otherwise be provided in this Agreement. The parties agree any franchise law or business opportunity law of the State of Connecticut, now in effect, or adopted or amended after the date of this Agreement, will not apply to franchises located outside of Connecticut. This Agreement, including the Recitals and all exhibits, contains the entire understanding of the parties and supersedes any prior written or oral understandings or agreements of the parties relating to the subject matter of this Agreement. The parties may not amend this Agreement orally, but only by a written agreement, except we may amend the Operations Manual from time to time as provided in this Agreement. The provisions of this Agreement which by their terms are intended to survive the termination or expiration of this Agreement, including, but not limited to, Subparagraphs 5 c , 5 h , 5 k , 8 d , 8 e , 8 g , 8 h , 11 b , 11 h , 11 i ,

11.m , 11.n.and 11.o , and Paragraphs 10, 13, 14, 15, 16, 17, and 19, will survive the termination or expiration of this Agreement

**14. AMENDMENT OF PRIOR AGREEMENTS.** The parties want to encourage advertising cooperation and franchisee compliance, provide for amicable, timely, and cost effective resolution of Disputes with limitations on liability, and clarify certain provisions of existing Franchise Agreements To achieve these goals, this Agreement has revised provisions regarding payment of taxes, costs and expenses, responsibility for employment practices and employees, insurance, indemnification, increasing advertising contributions, reporting information electronically by personal computer based point-of-sale system, defaults and termination, interest and late fees, dispute resolution, no territorial rights and our unlimited right to compete, governing law, merger clause, continuing effect, and limitation of liability You agree to accept the provisions set forth in Subparagraph 5 b , Subparagraph 5 c , Subparagraph 5.f , Subparagraph 5 l , Subparagraph 5 m , Paragraph 8, Paragraph 10, Subparagraph 11 f , Subparagraph 11 m , Subparagraph 11 n , Subparagraph 11 o , Paragraph 13, and Paragraph 17 in this Agreement, for this Agreement and to the amendment of all your other existing Franchise Agreements with us to include these provisions (if the existing Franchise Agreements do not already include these provisions) **EACH OF YOU SIGNING THIS AGREEMENT AS FRANCHISEE ACKNOWLEDGES AND UNDERSTANDS THAT THIS PARAGRAPH 14 AMENDS ALL YOUR EXISTING FRANCHISE AGREEMENTS WITH US, AND ANY SUCH AMENDMENT WILL SURVIVE THE TERMINATION OR EXPIRATION OF THIS AGREEMENT.** This Paragraph 14 amends any existing Franchise Agreement you have if every individual who signed the existing Franchise Agreement as franchisee signs this Agreement or another Franchise Agreement containing the provisions of this Paragraph 14

**15. RELEASE.** You acknowledge no employee, agent, or representative of ours, or our Affiliates, or our development agents, has made any representations to you, and you have not relied on any representations, except for the representations contained in this Agreement, the Offering Circular, and our advertising materials, and except those you have written in below·

_____

_____

_____

**16. NO PRIOR CLAIMS.** You represent that as of the date of this Agreement, you have no claims of any type against us, our Affiliates, or the Development Agent, or our agents, representatives, shareholders, directors, officers, and employees, or those of our Affiliates and the Development Agent, except those you have written in below·

_____

_____

_____

You hereby release each of these individuals and entities from all claims other than those you listed above You acknowledge and understand that any list of claims and the general release will include any alleged breaches of franchise or other laws, and any alleged breach of agreement, relating not only to this Agreement, but also to any other franchise you have or had with us at any time

**17. LIMITATIONS ON DAMAGES.** EACH PARTY HEREBY WAIVES, WITHOUT LIMITATION, ANY RIGHT IT MIGHT OTHERWISE HAVE TO ASSERT A CLAIM FOR AND/OR TO RECOVER LOST PROFITS AND OTHER FORMS OF CONSEQUENTIAL, INCIDENTAL, CONTINGENT, PUNITIVE AND EXEMPLARY DAMAGES FROM THE OTHER EXCEPT AS PROVIDED HEREIN EACH PARTY'S LIABILITY SHALL BE LIMITED TO ACTUAL COMPENSATORY DAMAGES ACTUAL COMPENSATORY DAMAGES SHALL BE THE GREATER OF (1) $100,000 00 OR (2) AT YOUR SOLE OPTION, ALL AMOUNTS PAID TO US FOR FRANCHISE FEES AND ROYALTIES FOR THIS AGREEMENT FOR UP TO THREE YEARS PRECEDING THE DATE OF ANY AWARD HEREIN IF YOU CHOOSE OPTION (2), WE WILL ALSO REPURCHASE YOUR EQUIPMENT, PURCHASED FROM OR THROUGH US, AT DEPRECIATED VALUE USING THE FIVE YEAR, STRAIGHT LINE METHOD OF CALCULATION EACH PARTY ACKNOWLEDGES THAT IT HAS HAD A FULL OPPORTUNITY TO CONSULT WITH COUNSEL CONCERNING THIS WAIVER, AND THAT THIS WAIVER IS INFORMED, VOLUNTARY, INTENTIONAL, AND NOT THE RESULT OF UNEQUAL BARGAINING POWER

**18. WAIVER OF JURY TRIAL.** EACH PARTY HEREBY WAIVES, WITHOUT LIMITATION, ANY RIGHT IT MIGHT OTHERWISE HAVE TO TRIAL BY JURY ON ANY AND ALL CLAIMS ASSERTED AGAINST THE OTHER. THIS

WAIVER IS EFFECTIVE EVEN IF A COURT OF COMPETENT JURISDICTION DECIDES THAT THE ARBITRATION PROVISION IN PARAGRAPH 10 IS UNENFORCEABLE. EACH PARTY ACKNOWLEDGES THAT IT HAS HAD A FULL OPPORTUNITY TO CONSULT WITH COUNSEL CONCERNING THIS WAIVER, AND THAT THIS WAIVER IS INFORMED, VOLUNTARY, INTENTIONAL, AND NOT THE RESULT OF UNEQUAL BARGAINING POWER  EACH PARTY AGREES THAT ANY SUCH TRIAL SHALL TAKE PLACE IN A COURT OF COMPETENT JURISDICTION IN CONNECTICUT

**19. CONSENT TO TERMS OF AGREEMENT.** You acknowledge you read and understand this Agreement, including any addenda and exhibits, and you agree to be bound by all of its terms and conditions

**20. ACKNOWLEDGEMENT.** YOU ACKNOWLEDGE NO REPRESENTATIONS HAVE BEEN MADE TO YOU EXCEPT THOSE SET FORTH IN THIS AGREEMENT, THE OFFERING CIRCULAR, AND OUR ADVERTISING MATERIALS, AND YOU HAVE NO CLAIMS OF ANY TYPE AGAINST US, OUR AFFILIATES, THE DEVELOPMENT AGENT, OR OUR AGENTS, REPRESENTATIVES, SHAREHOLDERS, DIRECTORS, OFFICERS AND EMPLOYEES, OR THOSE OF OUR AFFILIATES AND THE DEVELOPMENT AGENT, EXCEPT ANY REPRESENTATIONS OR CLAIMS YOU WROTE IN THE SPACES PROVIDED IN PARAGRAPHS 15 AND 16

**IN WITNESS WHEREOF**, the parties have executed this Agreement, as of the date first written above.

| FRANCHISEE(S) | DOCTOR'S ASSOCIATES INC |
|---|---|
| _[signature]_ | By _____ |
| Franchisee | |
| _[signature]_ | Title _____ |
| Franchisee | |
| _____ | |
| Franchisee | |

DAI 04/05

FRANCHISE AGREEMENT ADDENDUM

Franchise: 39005

This Addendum dated December 20, 2005 amends and supplements the Franchise Agreement of the same date between Doctor's Associates Inc , a Florida Corporation with principal office in Fort Lauderdale, Florida ("we" or "us"), and Avi Cohen, Ghazi J. Faddoul ("you") The Franchise Agreement, as amended by this Addendum, will be called this "Agreement"

*AGREEMENT*

The parties amend and supplement the Franchise Agreement as follows

I    Recital K is amended by adding the following to the first sentence

<u>Subparagraph 5 f</u> (regarding reporting information electronically by personal computer based point-of-sale system, acceptance of debit and credit cards, SUBWAY® Cash Card Program and other new technology initiatives)

II    Paragraph 1 is amended by adding the following after the second sentence (starting "When you sign this Agreement ")

**The initial franchise fee and transfer fee amounts indicated in this Agreement, reflect an increase which will not be effective for existing SUBWAY® franchisees until January 1, 2006.**

III    Subparagraph 1 a is amended by replacing the reference to $12,500 in the second sentence with $15,000

IV    Subparagraph 1 b is amended by replacing the reference to $6,000 in the second sentence with $7,500 and by replacing the reference to $6,500 in the last sentence with $7,500

V    Subparagraph 1 d is amended by replacing the reference to $1,500 in the second sentence with $5,000

VI    Subparagraph 1 e is amended by replacing the remaining sentences after the heading "Add On Fee." with the following

$10,500 Individuals who are existing SUBWAY® franchisees represent their franchises are in substantial compliance with the Operations Manual and there are no defaults under any Franchise Agreements The Franchise Fee is the reduced Franchise Fee of $7,500 plus an add-on fee of $3,000 to add individuals who are not SUBWAY® franchisees If the representations of the existing franchisees are not true when a lease is signed, you agree to pay an additional $4,500 We may refund your add-on fee of $3,000 if an individual is added to this Agreement and fails to achieve a passing score on our standardized test conducted during the training program as provided in Subparagraph 5 a (2)

VII    The second sentence of Subparagraph 5 d is replaced with the following

You agree to pay us $15,000 for each business you own or operate in violation of this Subparagraph, plus eight percent (8%) of its gross sales, as being a reasonable pre-estimate of the damages we will suffer

VIII    Subparagraph 5 f is replaced in total by the following

You will report your gross sales by telephone, facsimile, electronically, or by other means we permit, within two (2) days after the end of the business week (currently Tuesday) You will submit weekly summaries showing results of the Restaurant's operations by the following Saturday, in writing or in electronic form, as we permit, to locations we designate You will use and maintain at the Restaurant a personal computer based point-of-sale system and software compatible with our requirements You may be required to accept credit or debit cards from customers You may be required to obtain a report of all credit and debit transactions and may have to provide us with a copy of this report You may be required to invest in and implement new technology initiatives, which may include but will not be limited to the SUBWAY® Cash Card Program, LCD or plasma monitors, music, internet TV broadcast, WIFI and Software Management applications, high speed broad band connection, video surveillance, remote ordering through kiosks, PC's or hand held devices, E-learning, and software applications designed to better manage business functions and control costs You will be responsible for all fees associated with these new technology initiatives You may be required to use a supplier we designate for any goods and services associated with these initiatives At all times during the term of this Agreement you will use and maintain an address to send and receive electronic mail and attachments on the Internet and access to the World Wide Web You agree to install additions, substitutions, and upgrades to the hardware, software, and other items to maintain full operational efficiency and to keep pace with changing technology and updates to our requirements You will record all sales and designated business information in your system in the manner we specify in the Operations Manual You will

report your information to us electronically at weekly or other intervals we specify You also agree we may call up or poll your system to retrieve the information at any time We may estimate gross sales if you fail to report on time We may withdraw money from your checking account for Royalty and advertising contributions under the above Subparagraph, for the amounts then due based on reported or estimated sales We will adjust charges based on estimated gross sales after we determine actual sales

IX  The second sentence of Subparagraph 8 g is replaced with the following

You agree to pay us $15,000 for each sandwich business location you are associated with in the restricted area in violation of this Subparagraph, plus eight percent (8%) of the gross sales of such location during the one (1) year period, as being a reasonable pre-estimate of the damages we will suffer

X  Sentence (6) of Subparagraph 9 a is replaced with the following

(6) you pay us $6,500 (plus any applicable Sales Tax) for our legal, accounting, training, and other expenses we incur in connection with the transfer.

XI  Subparagraph 9 a is further amended by adding the following as the last sentence

During the transfer process, DAI may share your personal information with its affiliates or prospective franchisees in accordance with the procedures set forth in the Company Privacy Policy If you do not want your information shared during the transfer process, you must opt out either prior to the completion of the store transfer or at the time of the transfer All opt out requests should be directed to the Privacy Officer, as set forth in the policy

XII  Subparagraph 9 b is replaced in total with the following

b  You may assign your rights under this Agreement to operate the Restaurant (but not this Agreement) to a corporation (or similar entity) provided  (1) the corporation is newly organized and its activities are confined exclusively to operating the Restaurant, (2) you are, and remain at all times, the owner of the controlling voting interest and majority ownership interest (more than 50%) of the corporation, (3) each individual who signs this Agreement owns no less that twenty-five percent (25%) of the corporation, (4) the corporation delivers to us a written assumption of your obligations under this Agreement, (5) all shareholders of the corporation deliver to us a written guarantee of the full and prompt payment and performance by the corporation of all its obligations to us under the assignment, (6) you acknowledge to us in writing that you are not relieved of any personal liability, and (7) you deliver a general release described in Subparagraph 9 a , signed by you, the corporation, and each shareholder of the corporation You will also remain personally liable under the Sublease You acknowledge that any judgment awarded in our favor, pursuant to this Agreement, may be enforced against you, the corporation and its successors or assigns

XIII  The Franchise Agreement, as amended and supplemented by this Addendum, contains the entire understanding of the parties  The parties can amend the Franchise Agreement further only in a signed writing The provisions of the Franchise Agreement, as amended and supplemented by this Addendum, are ratified and affirmed

XIV  You acknowledge you read and understand this Addendum and the Franchise Agreement and consent to be bound by all the terms and conditions of the Franchise Agreement, as amended and supplemented by this Addendum

IN WITNESS WHEREOF, the parties have executed this Addendum, as of the date first written above

FRANCHISEE(S)                                       DOCTOR'S ASSOCIATES INC

_____                           By _____
Franchisee
                                                    Title _____
_____
Franchisee

_____
Franchisee

_____                                          DAI 10/05
Franchisee